UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| LINDA P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-625-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Linda P. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply brief. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 8) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on June 13, 2019, alleging disability beginning May 24, 2018 (the disability onset date), due to psychotic disorder, depressive disorder, generalized anxiety disorder, panic disorder, personality disorder, schizoaffective disorder (bipolar type), cervical and lumbar degenerative disc disease, fibromyalgia, arthritis, and bilateral plantar fasciitis and tendinitis. Transcript ("Tr.") 12, 14, 89-90, 219. Plaintiff's claim was denied initially

on October 10, 2019, and again on reconsideration on December 26, 2019, after which she requested an administrative hearing. Tr. 12. On February 24, 2021, Administrative Law Judge John Farrell ("the ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Kathryn Eastman, an attorney. Tr. 12. Edmond Calandra, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on February 24, 2021, finding that Plaintiff was not disabled. Tr. 9-28. On April 23, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's February 24, 2021 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 12.

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 24, 2021 decision:

1. The claimant has not engaged in substantial gainful activity since June 13, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: psychotic disorder, depressive disorder, generalized anxiety disorder, panic disorder, personality disorder, schizoaffective disorder (bipolar type), cervical and lumbar degenerative disc disease, fibromyalgia, arthritis, and bilateral plantar fasciitis and tendinitis (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[2] except that she is limited to simple, routine tasks; she can have only occasional interaction with the public, co-workers and supervisors; she must work in an environment in which workplace changes are both infrequent and gradually introduced; and she is unable to perform production-paced work.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on July 17, 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 13, 2019, the date the application was filed (20 CFR 416.920(g)).

Tr. 12-23.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on June 13, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 23.

## ANALYSIS

Plaintiff asserts two points of error, both of which challenge the ALJ's analysis of the opinion evidence, as well as the RFC finding. *See* ECF No. 7-1 at 10-19. Plaintiff first argues that the physical RFC was not supported by substantial evidence because (1) the ALJ improperly relied on the opinions of non-examining physicians; (2) the ALJ created a gap in the record by rejecting the only examining opinion of record related to Plaintiff's physical limitations; and (3) the ALJ failed to adequately consider the impact of Plaintiff's foot impairments on her physical capabilities. *See id*. at 10-15. Plaintiff next argues that the ALJ failed to incorporate all the mental limitations assessed in the opinions of state agency reviewing psychologists T. Inman-Dundon, Ph.D. ("Dr. Inman-Dundon), and J. May Ph.D. ("Dr. May"), opinions which the ALJ purported to find persuasive. *Id*. at 15-19.

The Commissioner argues in response that the ALJ properly developed the record and well-supported opinions from non-examining sources, such as here, may provide substantial evidence supporting the RFC. *See* ECF No. 8-1 at 5-8. The Commissioner also argues that there was no gap in the record, and the ALJ satisfied his burden to develop the record by holding the record open

for Plaintiff to submit evidence supporting her foot complaint, which she failed to do. *See id*. at 8-11. Finally, the Commissioner argues that the RFC properly reflects the mental work-related limitations assessed by Dr. Inman-Dundon and Dr. May. *See id*. at 12-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's analysis of the opinion evidence, as well as his RFC finding are supported substantial evidence. Furthermore, the ALJ was not required to base the RFC directly on any particular medical opinion, as Plaintiff argues. In addition to the opinion evidence, the ALJ properly considered Plaintiff's treatment history, including that her mental health impairments were effectively treated with prescription medication and counseling, as well as Plaintiff's own reports and subjective allegations about her symptoms, which the ALJ noted were not entirely consistent with the medical evidence. Because substantial evidence supports the ALJ's decision, the Court finds no error.

On December 12, 2018, Plaintiff consulted with podiatrist Angela Riznyk, D.P.M. ("Dr. Riznyk"), in the office Peter Riznyk, D.P.M, L.L.C., complaining of bilateral foot pain. Tr. 354-56. Dr. Riznyk assessed (among other things) bunions and PT (posterior tibialis) tendinitis and treated Plaintiff with an injection. Tr. 356. During a follow-up visit on January 16, 2019, Dr. Riznyk administered a second injection and recommended orthotics. Tr. 359-60. On May 16, 2019,

Plaintiff reported she was wearing her orthotics and her "feet have been feeling good." Tr. 357. Dr. Riznyk noted that Plaintiff's tendonitis and plantar fasciitis had improved. *Id*.

On June 15, 2019, Plaintiff presented to Dr. Riznyk to discuss surgical treatment for her right foot bunion. Tr. 363. Plaintiff reported that she had tried to wear wider shoes, but she continued to have pain. *Id*. Dr. Riznyk advised Plaintiff that she would like to perform an Austin bunionectomy with a possible Akin osteotomy, and after explaining the details of the surgery and the possible complications, Plaintiff stated she would like to go forward with the surgery as soon as possible. *Id*.

On September 24, 2019, Plaintiff presented to David Schaich, Psy.D. ("Dr. Schaich"), for a consultative psychiatric evaluation. Tr. 525. Plaintiff reported that she was receiving outpatient mental health treatment for depression and anxiety at Buffalo Psychiatric Center; she was seeing her therapist twice per month and a psychiatrist once per month. *Id*. Upon mental status examination, Dr. Schaich noted that Plaintiff was cooperative, had fair overall presentation, but "was poorly related." Tr. 526. He also noted that Plaintiff appeared older than her stated age; she had slouched posture; and her motor behavior was lethargic. *Id*. Dr. Schaich further noted that Plaintiff's thought processes were "circumstantial with loose associations marked by delusions." *Id*. Plaintiff believed that she could read people's minds and had ESP. *Id*. She had flat affect and anxious mood; mildly impaired attention and concentration due to limited intellectual functioning; and mildly impaired recent and remote memory skills. Tr. 526-27. Plaintiff's cognitive functioning appeared to be below average; her general fund of information was somewhat limited; and she had poor insight and fair judgment. Tr. 527.

Dr. Schaich opined that Plaintiff had moderate limitations with respect to her ability to concentrate, persist, or maintain pace and her ability to sustain an ordinary routine and maintain

attention. Tr. 527-28. He further opined that Plaintiff had "marked" limitations with respect to her ability to interact with others, her ability to use reason and judgment in the workplace, and her ability to regulate emotions, control behavior, and maintain well-being. Tr. 528.   Finally, Dr. Schaich concluded, that while the results of Plaintiff's evaluation appeared to be consistent with psychiatric problems, her symptoms did not appear to be significant enough to interfere with her daily functioning. *Id*.

On September 24, 2019, Plaintiff presented to Hongbiao Liu, M.D. ("Dr. Liu "), for a consultative internal medicine examination. Tr. 531-34. Plaintiff reported a history of arthritis and degenerative changes in her back that had been present "for a couple of years." Tr. 531. She also reported whole-body joint pain, low back pain that radiated to both legs, and "[a]ssociated numbness and tingling in her bilateral hands and toes occasionally." *Id*. Plaintiff also reported she "could walk one block." *Id*. On physical examination, Dr. Liu observed a normal gait and stance; Plaintiff could walk on her heels and toes with moderate difficulty because of low-back pain; she used no assistive devices to ambulate or stand; needed no help changing for the exam or getting on and off the exam table; and she was able to rise from a chair without difficulty; and had full (5/5) strength in the lower extremities. Tr. 532. Straight leg raise testing was positive bilaterally in the seated and supine positions. Tr. 533. Dr. Liu assessed "mild limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing." Tr. 534.

On October 8, 2019, state agency psychologist Dr. Inman-Dundon reviewed Plaintiff's record as of that date and opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular

attendance; be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in a work setting; and set realistic goals or make plans independently of others. Tr. 99-100.

On October 2, 2019, state agency physician H. Miller, M.D. ("Dr. Miller"), reviewed Plaintiff's record at the time and opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk for a total of about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. Tr. 97.

On November 12, 2019, state agency psychologist Dr. May reviewed Plaintiff's file at the reconsideration stage and opined that Plaintiff had moderate limitations in the ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially

appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in a work setting; and set realistic goals or make plans independently of others. Tr. 115-17.

On December 18, 2019, state agency physician J. Koenig, M.D. ("Dr. Koenig"), reviewed Plaintiff's file on reconsideration and opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Tr. 113. Dr. Koenig opined that Plaintiff could stand and/or walk for a total of about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. Tr. 113-14.

As noted above, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not properly analyze the opinion evidence. *See* ECF No. 7-1 at 10-19. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4

(W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed her application on June 13, 2019, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of

the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow

and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's arguments, the ALJ properly considered the opinion evidence and relied on other evidentiary sources to make an RFC finding that accounted for all of Plaintiff's credible limitations, as supported by the record. Tr. 18-22.  *See* 20 C.F.R. §§ 404.1527, 416.927. Furthermore, the ALJ did not assess Plaintiff's RFC based on bare medical findings and his own lay judgement simply because he did not rely on an opinion that mirrored the RFC, as Plaintiff argues. Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, however, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Furthermore, there is no requirement that the ALJ accept every limitation in a medical source's opinion. *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (holding that the ALJ properly declined to credit certain conclusions in a medical source's opinion that were inconsistent with other evidence of record). Moreover, there is no requirement that an ALJ's RFC finding be based on a

medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental functioning). Thus, contrary to Plaintiff's argument, the ALJ was not required to craft an RFC that mirrored a medical opinion and was not bound to adopt the entirety of any opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record).

Plaintiff also wrongly argues that: "It is well settled that opinions from non-examining sources do not constitute substantial evidence on their own." *See* ECF No. 7-1 at 11-12. While Plaintiff misleadingly cites several cases where a court found that an ALJ improperly relied on a non-examining source opinion, such findings were based on the facts of a particular record. None of these cases stand for the broad proposition that opinions from non-examining sources categorically do not constitute substantial evidence. Contrary to Plaintiff's argument, the Commissioner's regulations permit the opinions of non-examining sources, such as state agency consultants, to constitute substantial evidence in support of the ALJ's decision. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (State agency consultants are recognized experts whose medical opinions can constitute substantial evidence); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (the Commissioner's regulations permit the opinions of non-examining sources to constitute substantial evidence in support of the ALJ's decision, and can even override a treating source opinion); 652 F. App'x 25, 28 (2d Cir. 2016); *Heagney O'Hara v. Commissioner*, 646 F. App'x 123, 126 (2d Cir. 2016) (the ALJ correctly gave great weight to the opinion of a medical

expert; even though he lacked a treating relationship because his opinion was consistent with the objective medical evidence in the record.); *Camille v. Colvin*, 652 F. App'x 25, 28 4 (2d Cir. 2016) (rejecting Camille's contention that state agency psychological consultant's opinion was "stale" because it did not have the benefit of later-submitted treatment records and treating physician evidence); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (finding that opinion of state agency physician provided substantial evidence to support ALJ's RFC finding). Therefore, Plaintiff's argument is incorrect.

Plaintiff next challenges the ALJ's consideration of the three opinions related to her physical impairments—opinions from consultative examiner Dr. Liu (Tr. 531-34) and from state agency reviewing physicians Dr. Miller and Dr. Koeing (Tr. 97, 113-14,). *See* ECF No. 7-1 at 11-12.  The ALJ found Dr. Liu's opinion "not particularly persuasive." Tr. 21. The ALJ noted that Dr. Liu "[d]id not explain what precisely is meant by 'mild' [limitations]" and failed to provide any further elaboration about Plaintiff's exertional limits. *Id*. However, the ALJ found "persuasive "the opinions from Dr. Miller and Dr. Koeing because they were "mutually consistent and fully supported by the medical record, which demonstrates that [Plaintiff's] physical symptoms have been controlled with routine treatment." Tr. 21. Plaintiff asserts that in finding Dr. Liu's opinion "not particularly persuasive," the ALJ "rejected the only examining opinion of record related to Plaintiff's physical limitations." *See id*. at 10. Plaintiff further asserts that the ALJ's finding the opinions of Dr. Miller and Dr. Koeing persuasive was not "enough to support the physical portion of the RFC finding, especially in light of Plaintiff's many severe physical impairments." *See* ECF No. 7-1 at 12. The Court disagrees.

First, Dr. Liu's assessment of "mild limitation for prolonged walking, bending, kneeling, squatting, lifting, carrying, overhead reaching, prolonged sitting, standing, and stair climbing" (Tr.

534) supports the ALJ's RFC finding (Tr. 18), as mild limitations are consistent with the ability to perform the light work. *See, e.g.*, *Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (Second Circuit agreed that the RFC assessment for a significant range of light work was supported by an assessment from a consultative examiner's assessment of "mild limitations for prolonged sitting, standing, and walking," and direction that Lewis should avoid "heavy lifting, and carrying."); *Hamilton v. Comm'r, Soc. Sec.*, Civ. No. 19-770, 2020 WL 5544557, at *4 (W.D.N.Y. Sept. 16, 2020) (stating that "the ALJ's RFC determination incorporated the "mild to moderate" limitations for prolonged walking, bending, and kneeling . . . , which is demonstrated by the ALJ's limiting Hamilton to light work with additional restrictions relevant to these activities."); *Dier v. Colvin*, Civ. No. 13-5025, 2014 WL 2931400, at *4 (W.D.N.Y. June 27, 2014) ("while the treating physician and consultative examiner used terms like 'mild' and 'moderate[,]' this does not automatically render their opinions void for vagueness"). Because Dr. Liu's assessment is consistent with the RFC for light work, Plaintiff's argument fails.

Additionally, there was sufficient other medical evidence in the record on which the ALJ based his RFC finding. For example, Dr. Miller reviewed the record on October 2, 2019, and Dr. Koenig reviewed the record on December 18, 2019, including the examination results and assessment of mild limitations from Dr. Liu. Tr. 97-98, 113-14, 118.  Dr. Miller and Dr. Koenig both opined that Plaintiff could perform light work consistent with the RFC. *See id*. As explained above, well-supported assessments from non-examining state agency medical sources, such as Drs. Miller and Koeing, may provide substantial evidence supporting an RFC. Thus, the Court finds no error in the ALJ finding persuasive the opinions of Drs. Miller and Koeing. Tr. 21.

Next, Plaintiff complains that the ALJ's decision was somehow incomplete or incorrect because Drs. Liu, Miller, and Koenig "did not have the opportunity to consider developments in

Plaintiff's medical condition that the ALJ was made aware of at the hearing level," specifically, testimony about her foot problems. *See* ECF No. 7-1 at 13. At the December 2, 2020 hearing, Plaintiff testified that she had foot surgery "last year" and "couldn't walk that good right now." Tr. 37. She further testified that she broke her foot after having one foot surgery done, '[t]hen COVID-19 happened [,] and [she had] been walking on a broken foot for the last year." *Id.*; *see also* Tr. 53. Contrary to Plaintiff's argument, Drs. Miller and Koenig considered Plaintiff's problems with her feet, specifically noting records from treating podiatrist Dr. Riznyk (Tr. 354-64) indicating that Plaintiff's plantar fasciitis had improved; orthotics had been recommended; and Plaintiff was scheduled to have a bunionectomy. Tr. 98, 114. Moreover, on September 24, 2019, Dr. Liu observed that while Plaintiff reported that she "could walk one block," on physical examination, she had a normal gait and stance; she could walk on her heels and toes with moderate difficulty because of low-back pain (not feet problems); used no assistive devices to ambulate or stand; needed no help changing for the exam or getting on and off the exam table; was able to rise from a chair without difficulty; and had full (5/5) strength in the lower extremities, all of which reasonably supported Dr. Liu's assessment of only mild difficulty in walking (Tr. 532-34). Furthermore, Dr. Liu's assessment was consistent with the assessments of Drs. Miller and Koenig (Tr. 97, 113-14), as well as consistent with the performance of light work as set forth in the RFC (Tr. 18).

Notably, it is Plaintiff's burden to establish blindness or disability by informing the Agency about, or submitting, all evidence known to the claimant that relates to whether the claimant is blind or disabled. 20 C.F.R. § 416.912(a). "While the ALJ does have a concurrent duty to assist in developing the record, that does not relieve Plaintiff of her duty to provide evidence in support of her claim." *Waldvogel v. Comm'r of Soc. Sec.*, No. 6:16-CV-0868, 2017 WL 3995590, at *8

(N.D.N.Y. Sept. 11, 2017); *see Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009) (holding that Plaintiff ultimately bears the burden of proving disability, and the ALJ's duty to develop the record is not absolute). Plaintiff's failure to provide additional evidence "does not show that the ALJ was required to seek out that evidence himself." *Waldvogel*, 2017 WL 3995590, at *8; *see also LaRon H. v. Comm'r of Soc. Sec.*, No. 20-CV-07099-MJR, 2023 WL 2042623, at *1 (W.D.N.Y. Feb. 16, 2023). Furthermore, "a representative has an affirmative duty to provide competent assistance to the claimant, including acting with reasonable promptness to help obtain information or evidence the claimant must submit." Social Security Regulation ("SSR") 17-4p, 2017 WL 4736894 at *4; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5. (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about h[er] own medical condition, to do so.").

At the hearing, the ALJ asked if the medical record was complete, to which Plaintiff's representative replied that Plaintiff was "talking about a surgery that's going to happen later this month. So, at this time, everything is in, but I hate to say closed. So, there's more medical treatment to come down the pike later on." Tr. 33-34, 60. The ALJ then held the record open for 30 days for these records to be submitted. Tr. 60-61. The record reflects that on December 30, 2020, Plaintiff's representative sent a request to the ALJ to keep the record open for an additional two weeks. Tr. 302. Plaintiff's representative sent a similar request on January 4, 2021. Tr. 303. Yet, the record contains no proffer of additional medical evidence. Nor did Plaintiff's representative raise this issue in the pre-Hearing Memo (Tr. 300-01) or argue to the Appeals Council that such records were necessary and/or forthcoming (Tr. 306-07). Thus, Plaintiff argues for the first time to this Court that her case should be remanded because she and her lawyers failed to submit evidence supporting her subjective allegation that she could not walk well due to a recently broken foot.

As noted above, the ALL held the record open for approximately two months following the hearing, and the promised records were not submitted. Furthermore, the ALJ satisfied whatever burden he may have had to develop the record by obtaining a consultative examination from Dr. Liu, as well as assessments from Drs. Miller and Koeing, all of which considered Plaintiff's foot impairment and were consistent with the RFC. *See Camille*, 652 F. App'x at 28 n.4 (finding that because the evidence dated after the state agency medical consultant's opinion did not differ materially from the evidence that the consultant did consider, it was found that the ALJ committed no error by relying on the non-examining physician); *see also Palistrant v. Comm'r of Soc. Sec.*, No. 16-CV-588-FPG, 2018 WL 4681622, at *6 (W.D.N.Y. Sept. 28, 2018) ("Just because the claimant continues treatment after an opinion is rendered, however, does not mean that the opinion is stale. Although Palistrant also argues that he experienced a 'serious deterioration' of his back and neck issues after the opinions were rendered [ ], the record does not support this assertion."). Based on the foregoing, the Court finds no error in the ALJ's evaluation of the opinion evidence relating to Plaintiff's physical impairments.

Plaintiff's second point of error argues that the ALJ found the assessments from Dr. Inman-Dundon and Dr. May (Tr. 99-100, 115-17) "largely persuasive" and "fully consistent with the medical record []" (Tr. 20), but then did not include their assessed "moderate" limitations in the RFC finding. *See* ECF No. 7-1 at 15-18. As an initial matter, contrary to Plaintiff's argument, the ability to perform unskilled work, such as the ALJ found here, is consistent with even moderate limitations. *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014), 758 F.3d (finding that moderate limitation in maintaining concentration, persistence, or pace or in relating with others did not preclude unskilled work); *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (finding ALJ's RFC corresponded with opinions suggesting Snyder suffered, at most, moderate limitations

in mental work-related functioning); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in plaintiff's work-related functioning); *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (moderate limitations in different work-related areas were reasonably found to not preclude unskilled work); *Mayer v. Comm'r of Soc. Sec.*, No. 18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases).

Moreover, Plaintiff's argument ignores the remainder of the assessments from Drs. Inman-Dundon and May, wherein, when asked to explain in narrative form each of these moderate limitations, they each stated: "See PRT." Tr. 99-100, 115-16. Then in the PRT (psychiatric review technique) forms, Drs. Inman-Dundon and May explained in more detail what these moderate limitations meant:

> [Plaintiff] retains the capacity to engage in simple tasks. [Her]ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle only brief and superficial contact. [Her] ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work settings.

Tr. 95, 111.

These are precisely the limitations included in the ALJ's RFC finding, as well as in the hypothetical question posed to the vocational expert. Tr. 18, 59. Specifically:

> [Plaintiff] is limited to simple, routine tasks; she can have only occasional interaction with the public, co-workers and supervisors; she must work in an environment in which workplace changes are both infrequent and gradually introduced; and she is unable to perform production-paced work.

Tr. 18.

Therefore, Plaintiff's argument that the "moderate" limitations assessed by Dr. Inman-Dundon and Dr. May were not included in the RFC finding fails on the face of what they wrote in the PRT. *See* ECF No. 7-1 at 15-18. Accordingly, the Court finds no error.

Based on the foregoing, the ALJ properly analyzed the entire record in accordance with the Commissioner's regulations and properly assessed Plaintiff's RFC. *See* 20 C.F.R. § 416.946(c) (the responsibility for determining a claimant's RFC rests solely with the ALJ); *see also Richardson*, 402 U.S. at 399 (it is within the sole province of the ALJ to weigh all evidence and resolve material conflicts); *see Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (it is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon "adequate findings supported by evidence having rational probative force"). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE